**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NIKA LURSMANASHVILI,** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 26-7716** |
| **J. L. JAMISON, *et al.*** | : | |

**MEMORANDUM OPINION**

**Henry, J.** **October 19, 2026**

This case is before the Court on Nika Lursmanashvili's *pro se* Petition for Writ of Habeas Corpus (ECF No. 1).[1] Lursmanashvili challenges his current detention by Respondents at the Philadelphia Federal Detention Center after being arrested by ICE. Because I hold that Lursmanashvili's detention violates both 8 U.S.C. § 1226(a) and due process, I will grant the writ and order his immediate release.

## I. BACKGROUND

Lursmanashvili, a native of Georgia, encountered U.S. Border Patrol near Lukeville, Arizona after crossing the border on February 28, 2023. Pet. at 13.[2] He presented himself as seeking asylum, and was processed, issued a Notice to Appear dated March 1, 2023, and released into the United States. *Id.* Petitioner submitted an asylum application on March 13, 2023, and has attended all ICE check-ins as required since then. *Id.* at 13-14. His asylum application is still pending, and he has an immigration hearing scheduled for July 28, 2027. *Id.* at 13.

[1] Although Lursmanashvili filed his petition pro se, counsel later entered an appearance on his behalf and filed a reply brief. See ECF Nos. 7 and 8.
[2] Because Lursmanashvili's *pro se* habeas petition contains both a completed form and an accompanying petition that were docketed together, I will use the pagination provided by the Court's ECF system when citing to the petition.

On October 5, 2026, ICE arrested Lursmanashvili at a regularly scheduled check-in at the ICE Philadelphia Field Office. Pet. at 7, 14. The Form I-213 submitted in connection with Lursmanashvili's detention stated that he "is subject to President Donald Trump's Executive Order, titled 'Protecting the American People Against Invasion.'" Respondents' Opposition ("Oppo."), ECF No. 6, Ex. A. It further states that he was served with a warrant of arrest and detained in ICE custody "due to available bed space." *Id.*

## II. DISCUSSION

Lursmanashvili argues, *inter alia*, that his detention violates due process because he was not subject to an individualized custody determination. Pet. at 7. Respondents argue that Lursmanashvili is lawfully detained under 8 U.S.C. § 1226(a), has not exhausted his administrative remedies, and that his detention does not violate due process. Oppo. at 6.

### A. Exhaustion

It is true that, prior to seeking habeas relief, petitioners "are ordinarily required to exhaust their administrative remedies." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases). Respondents argue that Lursmanashvili was required to exhaust administrative remedies in the form of completing a bond hearing and subsequent appeal to the BIA, if necessary, before filing his habeas petition with the Court. Oppo. at 7-9. However, I find that Lursmanashvili was not required to exhaust administrative remedies before requesting habeas relief.

Administrative exhaustion for Section 2241 habeas petitioners is prudential, and courts may excuse exhaustion "if 'administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.'" *Dos Reis v. McShane*, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)). I agree with many of my colleagues that administrative exhaustion is not

required where, as here, "[a] later bond hearing [would] not necessarily cure the alleged constitutional violation that preceded it." *Dos Reis*, 2026 WL 1746649 at *3. Here, the alleged deprivation of process occurred when Lursmanashvili was arrested and detained without an individualized custody determination. A subsequent bond hearing—the purpose of which is redetermination of custody, see *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)—would not cure a deprivation of due process at the initial custody determination stage. Therefore, exhaustion is excused.

**B. Detention Under 8 U.S.C. § 1226(a)**

Detention under 8 U.S.C. § 1226(a) is discretionary, and a non-citizen detained under Section 1226 has due process rights, "including a right to an individualized detention determination and a bond hearing." *Regalado-Nauta v. Jamison*, 2026 WL 2740528, at *3 (E.D. Pa. Sept. 16, 2026) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025). In *Dos Reis,* 2026 WL 1746649 at *4, the Court held that due process required ICE to exercise its 8 U.S.C. § 1226(a) discretion through "an individualized determination as to . . . whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'" *Id.* The Court held that the record did not reflect an individualized assessment where ICE did not provide "a reasoned finding that Petitioner is dangerous or a flight risk, or unsuitable for conditions short of detention." *Id.*

Here, Respondents briefly argue that ICE completed an individualized custody determination by "accurately determining that [Lursmanashvili] was present in the United States without lawful status as reflected in the Form I-213." Oppo. at 10. However, a review of the record before the Court shows that in fact, there was no individualized custody determination as to Lursmanashvili. Form I-213 merely states that Lursmanashvili is "subject to President Donald Trump's Executive Order, titled 'Protecting the American People Against Invasion'" and that

Petitioner does not have status as a citizen or resident of the United States. Oppo. at Ex. A. The Form I-213 further states that Lursmanashvili "will be detained in ICE custody due to available bedspace." *Id.* The Form does not discuss any risk of flight or danger to the community to justify the detention of Lursmanashvili. The "availability of bed space is not an individualized determination about [Lursmanashvili] under 1226(a)." See *Basboga v. Jamison*, 2026 WL 3033623, at *5 (E.D. Pa. Oct. 9, 2026). The Form clearly fails to undertake any type of individual examination of Lursmanashvili. Because he has not been afforded the required individualized custody determination, his detention under 8 U.S.C. § 1226(a) is unlawful.

**C. Constitutional Due Process**

Due process in the civil immigration context requires procedures that are reasonably calculated to avoid erroneous deprivations of liberty. See *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976). The Court set forth factors in *Mathews* that courts should balance in determining if an individual has been deprived of due process: (1) the private interest affected by official action; (2) the risk of erroneous deprivation of that interest and the probable value of additional safeguards; and (3) the Government's interest, including the burdens placed on it to provide the additional safeguards. 424 U.S. at 335.

I again agree with many of my colleagues that detention without an individualized custody review violates due process, and that a determination of an individual's presence in the United States without lawful status is insufficient to meet that threshold. See *Dos Reis*, 2026 WL 1746649 at *4 ("Reliance on status alone amounts to 'a per se determination' that 'comports not with 1226(a), but with [the Government's] desired policy of detention.'"); *Dzehtisarou v. Mullin*, 2026 WL 2211392, at *5 (E.D. Pa. July 31, 2026) ("Given the government's failure to provide reasoning based on an individualized determination, 'the facts clearly demonstrate that [Petitioner] was entitled to more process than he received pursuant to § 1226(a) and its implementing

regulations.'"). In both *Dos Reis* and *Dzehtisarou*, the Court balanced the factors set forth in *Mathews v. Eldridge*, 424 U.S. at 335, in determining whether detention without an individualized custody determination violated due process.

I agree with the reasoning in *Dos Reis* and *Dzehtisarou* that Lursmanashvili has a strong interest in freedom from physical confinement, that the risk of erroneous deprivation is great when an individual is detained without some determination of whether they present a danger or a flight risk, and the Government's interest in ensuring appearance at removal proceedings does not outweigh Lursmanashvili's interests in freedom from physical confinement and a determination of risk prior to detention. See *Dos Reis*, 2026 WL 174469 at *5; *Dzehtisarou*, 2026 WL 2211392 at *5-6. Here, it cannot be said that there was a sufficient individualized custody determination to outweigh Lursmanashvili's interest in freedom from physical confinement where the detaining agent's review of his case determined only that he was in the United States without lawful status, and there is no evidence that he was dangerous or a flight risk. Lursmanashvili's current detention thus violates his due process rights.

Respondents contend that there has been no deprivation of due process, as Lursmanashvili has exercised his right to request a bond hearing before an immigration judge, who will make a determination as to his custody. Respondents argue that that process is not yet complete, and therefore, "[Lursmanashvili] cannot demonstrate that his recent detention violates constitutional due process." Oppo. at 11. I disagree. A later bond hearing will not cure the initial procedural deficiency—Lursmanashvili's arrest without an individualized custody determination. See *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025) ("[I]n this case, the issue is that there is no 'initial decision' for [Petitioner] to 'appeal.' Accordingly, '[s]uch a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.'").

## III. CONCLUSION

For the foregoing reasons, Lursmanashvili's detention is improper and as such, his Petition is granted and his immediate release is ordered.